UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KAREN S. CHAUVIN, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-547** |
| **CHEVRON ORONITE COMPANY, LLC., ET AL** | **SECTION: "B"(3)** |

## ORDER AND REASON

Before this Court is Defendant Chevron ORONITE Company L.L.C. and Chevron U.S.A. INC.'s Motion to Dismiss Class Claims before the Class Certification hearing. (Rec. Doc. 39). This motion is opposed by the Plaintiffs, who have filed a timely opposition. (Rec. Doc. 45). For the following reasons, **IT IS ORDERED** that the Motion to Dismiss Class Claims is **DENIED WITHOUT PREJUDICE.**

Plaintiffs bring the instant Class Action suit against Chevron Oronite Company and Chevron, U.S.A. INC. ("Defendants") to recover damages allegedly caused by the release of toxic chemicals from Defendants' Oak Point facility in Belle Chase, Louisiana on January 30, 2007. (Rec. Doc. 1 at 3). Plaintiffs allege that Defendants own the fuel and lubricant additive facility known as Oak Point Plant, and on January 30, 2007, "a mixing unit overheated and/or malfunctioned… resulting in the release of toxic levels of maleic anhydride and other toxic substances." (Rec. Doc. 1 at 3).

Plaintiffs allege that as a result of release of these toxic chemicals, they were tortuously exposed to "harmful substances

known to cause serious health problems, including but not limited to, respiratory problems, such as allergic reaction and irritation and burning of the nose and throat, skin problems, such as irritation, burning and blistering of the skin, and burning or irritation of the eyes with swelling." (Rec. Doc. 1 at 3-4). Additionally, Plaintiffs allege that the chemical release resulted in the closing down of portion of Highway 23 and caused property damages to individuals in the area. (Rec. Doc. 1 at 4). Plaintiffs claim that Defendants bear the sole responsibility for these damages. (Rec. Doc. 1 at 4).

Plaintiffs seek class certification under Federal Rule of Civil Procedure 23(b)(3), and they contend that this action is on the behalf of "all residents or individuals who were in the area of the Oak Point Plant on January 30, 2007…" (Rec. Doc. 1 at 7). In their pleadings, Plaintiffs claim the following: (1) The class is so numerous that joinder of all issues is impracticable; (2) Common issues of law and fact exist for those affected by the chemical release; (3) Plaintiffs' claims are typical of the class; (4) Plaintiffs will fairly and adequately represent and protect the interests of the class; and, (5) A class action is the most efficient method for adjudicating the controversy and is superior to all other available methods of adjudication. (Rec. Doc. 1 at 7-9). The issue of class certification is disputed by Defendants. (Rec. Doc. 39-2).

Plaintiffs, in their complaint, present several factual assertions to support class certification. For numerosity, Plaintiffs assert that the class encompasses several hundred individuals who were exposed to toxic levels of maleic anhydride and other toxic substances from the Chevron Oronite plant. (Rec. Doc. 1 at 7). Geographically, Plaintiffs allege that they represent "all residents or individuals who were in the area of Oak Point Plant on January 30, 2007." (Rec. Doc. 1 at 7). Plaintiffs estimate that "the putative class is well over 100 persons." (Rec. Doc. 45 at 3).

With regard to commonality, Plaintiffs list issues that they believe provide the class commonality. (Rec. Doc. 1 at 7-8). Two common issues of law and fact that Plaintiffs allege are: (1) Whether Defendants are liable to the Plaquemines Parish residents and individuals in the class area for negligently allowing the release of substantial quantities of maleic anhydride and other toxic substances into the area surrounding the Oak Point Plant; and (2) Whether Defendants are liable to those that were exposed to the chemical for failure to contain the release. (Rec. Doc. 1 at 7-8).

In order to prove typicality, Plaintiffs allege that they "all reside and/or were present within the affected area." (Rec. Doc. 1 at 8). Plaintiffs' alleged injuries are to them personally and to their personal property that was allegedly contaminated by the

toxic chemical release of Defendants. (Rec. Doc. 1 at 8). Plaintiffs assert that their interests are "identical to those of the [proposed] class members." (Rec. Doc. 1 at 8). For adequacy of representation, Plaintiffs allege that their claims are interrelated to the claims of those that are absentees, and as such named Plaintiffs' interests are not in conflict with the unnamed class members. (Rec. Doc. 45 at 6).

In turning to the requirements of predominance and superiority, Plaintiffs contend that "common question[s] of liability clearly predominate" the case. (Rec. Doc. at 6). Plaintiffs again assert that the nine different common issues of law and fact they listed will significantly affect both named and unnamed members of the class. (Rec. Doc. 1 at 7-8). With regard to superiority, Plaintiffs contend that "the common liability issues can be tried in a single class action trial with any individual issues of damages reserved for individual treatment." (Rec. Doc. 45 at 7).

**Standard for Class Certification**

"A class may be certified under Rule 23(b)(3) only if it meets the four prerequisites found in Rule 23(a) and the two additional requirements found in Rule 23(b)(3)." *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 623 (5th Cir. 1999). The prerequisites of Rule 23(a) include: (1) Numerosity, where the class is so large that joinder of all members is impracticable; (2)

Commonality, which requires questions of law or fact be common to the class; (3) Typicality, the named parties' claims or defenses must be typical of the class; and (4) Adequacy of representation, the representatives must be able to fairly and adequately protect the interests of the class. See, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, (1997). In addition to these prerequisites, when plaintiffs seek class certification under Rule 23(b)(3) they must also demonstrate "both (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy." *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003). Whether the class action is the superior method for adjudication of a particular controversy and whether common issues predominate requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case. *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006).

### Numerosity

A requirement of Rule 23(a)(1) is that "the proposed class be so numerous that the joinder of all members is impracticable." *Bozes v. Parish of St. Bernard*, 252 F.R.D. 313, 315 (E.D. La. 2008). Plaintiffs are required to make more than a mere allegation that the class is too numerous to make joinder impracticable. *Bywaters v. United States*, 196 F.R.D. 458, 465 (E.D. Tex. 2000).

However, the numerosity requirement does not require the plaintiff to establish the exact number of potential class members. *Id*. "In order to satisfy his burden with respect to this prerequisite, a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Zeidman v. J. Ray McDermott & Co.*, 651 F. 2d 1030, 1038 (5th Cir. 1981). The relevant inquiry is not on sheer numbers alone, but focuses instead on whether joinder of all members is practicable in light of the numerosity of the class and all other relevant factors. *Pederson v. Louisiana State University*, 213 F.3d 858, 868 (5th Cir. 2000). The relevant factors the Court must consider include: (1) The geographical dispersion of the class; (2) The ease with which class members may be identified; (3) The nature of the action; and (4) The size of each plaintiff's claim. *Zeidman*, 651 F.2d at 1038.

In *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 624 (5th Cir. La. 1999), the court determined that the district court did not abuse its discretion in finding joinder impracticable. This case involved an interlocutory appeal of a district court decision to certify a class consisting of crew members of a floating casino who had respiratory illness caused by the vessel's defective ventilation system. *Id*. at 622. The court first explained the size of the class would likely be between 100 to 150 members which is generally within the range that satisfies the numerosity requirement. *Id*. at 625. The court then weighed the

nature of the employment of those in the proposed class, and their unwillingness to sue individually or join a suit for fear of retaliation at their jobs. *Id*. As a consequence of these factors, the court determined that joinder was impracticable. *Id*.

In the instant action, Plaintiffs allege that the class encompasses several hundred individuals who were exposed to toxic levels of maleic anhydride and other toxic substances from the Chevron Oronite plant. (Rec. Doc. 1 at 7). Geographically, Plaintiffs allege that they represent "all residents or individuals who were in the area of Oak Point Plant on January 30, 2007…" (Rec. Doc. 1 at 7). Plaintiffs estimate that "the putative class is well over 100 persons…" (Rec. Doc. 45 at 3). Plaintiffs have sufficiently presented a class that would generally be "within the range that satisfies the numerosity requirement." *Mullen*, 186 F.3d at 625. "Yet, the Court finds that… plaintiffs' proposed class definition is overboard, and tailoring of plaintiffs' proposed class definition is required." *McWaters v. FEMA*, 237 F.R.D. 155, 163 (E.D. La. 2006). District courts maintain substantial discretion in managing their cases, and this Court may take any necessary measures, such as redefining the class and creating sub-classes, in order to properly manage litigation. *Id*.

**Commonality**

Commonality requires the existence of questions of law or fact that are common to the class. Fed. R. Civ. P. 23(a)(2). The

-7-

inquiry into commonality is not demanding. *Mullen*, 186 F.3d at 625. "The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997), (citing *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir.1993)). For each class, all that is necessary is that there exists at least on common question of law or fact. *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001). Within the group of plaintiffs, their interest and claims need not be identical; again the commonality test is met when there is one issue whose resolution will affect a significant number of the proposed class. *Forbush*, 994 F.2d at 1106. "Therefore, the fact that some of the Plaintiffs may have different claims, or claims that may require some individualized analysis, is not fatal to commonality." *James,* 254 F.3d at 570.

Turning to the instant case, while Defendants present no arguments against Plaintiffs' commonality, Plaintiffs list several different issues that provide the class commonality. (Rec. Doc. 39-2 at 7), (Rec. Doc. 1 at 7-8). Two common issues of law and fact that Plaintiffs allege include: (1) Whether Defendants are liable to the Plaquemines Parish residents and individuals in the class area for allegedly negligently allowing the release of substantial quantities of maleic anhydride and other toxic substances into the area surrounding the Oak Point Plant; and (2)

Whether Defendants are liable to those that were exposed to the chemical for failure to contain the release. (Rec. Doc. 1 at 7-8). Principally, these two issues alone meet the requirement of commonality, but it is not without note that Plaintiffs present nine issues that could lead to a finding of commonality. However, questions of causation and differing injuries/damages may be problemic for commonality here.

**Typicality**

The Fifth Circuit has held that the test for typicality is also not demanding. *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. Tex. 2002) (citing *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)). The test for typicality focuses "on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Flanagan v. Ahearn (In re Asbestos Litig.)*, 90 F.3d 963, 975 (5th Cir. 1996). Typicality does not require completely identical claims. *James*, 254 F.3d at 571. Rather, what is critical is whether the class representative's claims have fundamentally the same essential characteristics of those of the putative class. *Id*. When the claims permeate from a similar course of conduct or transaction and share the same legal theory, factual differences will not defeat typicality. *Id*.

In the present case, Plaintiffs allege that they "all reside and/or were present within the affected area." (Rec. Doc. 1 at 8).

Plaintiffs' alleged injuries are to them personally and to their personal property that was allegedly contaminated by the toxic chemical release of Defendants. (Rec. Doc. 1 at 8). Plaintiffs assert that their interests are "identical to those of the [proposed] class members." (Rec. Doc. 1 at 8). Defendants solely rely on *In re FEMA Trailer Formaldehyde Products Liability Litig.*, 2008 WL 5423488 (E.D.LA 5/28/2002), to contest Plaintiffs' assertions of typicality. (Rec. Doc. 39-2 at 7-8). The Fifth Circuit states in Rule 47 that "unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppels or law of the case…". *In re FEMA Trailer Formaldehyde Products Liability Litig.* is an unreported district court decision from 2008 that holds minimal if any precedential value. Additionally, under the typicality test illustrated in *James*, factual differences do not defeat typicality when the claims arise out of a similar incident. Consequently, typicality appears to be established at this time.

**Adequacy of Representation**

The last requirement under Rule 23(a)(4) is that the representative parties fairly and adequately protect the interests of the class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) The absence of potential conflict between the named plaintiffs and the class members; and (2) The class representatives' choice of counsel who is qualified,

experienced and able to vigorously conduct the proposed litigation. *In re Universal Access, Inc.*, 209 F.R.D. 379, 386 (E.D. Tex. 2002). "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen*, 186 F.3d at 625-26. The adequate representation requirement for certification of class mandates inquiry into: (1) Zeal and competence of representative's counsel; and (2) Willingness and ability of representative to take active role in and control litigation and to protect interests of absentees. *Berger v. CompaqComputer Corp.*, 257 F.3d 475. (5th Cir. 2001).

Plaintiffs allege that their claims are interrelated to the claims of those that are absentees, and as such Plaintiffs' interests are not in conflict with the unnamed class members. (Rec. Doc. 45 at 6). All claims are based on the alleged toxic chemical exposure of Plaintiffs allegedly caused by Defendants, and named Plaintiffs assert the claims that the unnamed class members would presumably assert. Therefore, the adequacy of representation requirement appears clear at present.

**Predominance and Superiority**

"If Rule 23(a)'s prerequisites of numerosity, commonality, typicality, and adequacy are met, then the proposed class must additionally satisfy one of the three provisions for certification

under Rule 23(b)." *Cole v. GMC*, 484 F.3d 717, 723 (5th Cir. 2007). Plaintiffs in the present seek certification of a Rule 23(b)(3) class, which requires additional showings of predominance and superiority. (Rec. Doc. 1 at 7). Rule 23(b)(3) states, in pertinent part, that a class action may be maintained if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. In order to determine the issues of predominance and superiority, the court must analyze the following: (A) The interests of the members of the class in individually controlling prosecution or defense of separate actions; (B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) Concentrating the litigation of the claims in a particular forum; and (D) The difficulties likely to be encountered in management of a class action. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998). But essentially, to predominate "common issues must constitute a significant part of the individual case." *Mullen*, 186 F.3d at 626, (quoting *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)). Superiority essentially demands that the class action must be superior to other available methods for the fair adjudication of the controversy. *Washington v. CSC Credit Servs*.,

199 F.3d 263, 265 (5th Cir. 2000).

Plaintiffs contend that "common question of liability clearly predominate," while Defendants assert that "individual-specific issues will dominate at trial thus precluding class certification." (Rec. Doc. 45 at 6) & (Rec. Doc. 39-2 at 10). Defendants base their argument on the fact that Plaintiffs allege multiple different damages such as property and physical damages. (Rec. Doc. 39-2 at 11). For support of this theory Defendants first rely on the unreported case of *In re FEMA Trailer Formaldehyde Products Liability Litig.*, 2008 WL 5423488. (Rec. Doc. 39-2 at 12). While Defendants may be correct in asserting that each member's own discrete history may lead to "varying degrees of manifestations of [the] symptoms," they overlook the common liability questions that connect Plaintiffs. (Rec. Doc. 39-2 at 12). Plaintiffs asserted nine different common issues of law and fact that will significantly affect both named and unnamed members of the class. (Rec. Doc. 1 at 7-8).

Additionally, Defendants turn this Court's attention to *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006). In this case, the court reviewed the denial of class certification when individuals sought to sue for damages associated with the failure and burning of the defendant's control valve at its chemical plant. *Id*. at 600. The court found that class denial was appropriate where "it is clear from the record that the damages

claims in this case are not subject to any sort of formulaic calculation; instead, each individual plaintiff suffered different alleged periods and magnitudes of exposure and suffered different alleged symptoms as a result." *Id*. at 602. But even in expounding upon this issue, the court prudently limited its effect, stating that the critical calculation of damages on an individual basis will not preclude class certification unless this calculation cannot be made with some reference to a mathematical formula. *Id*. In light of this decision, the record is not clear on the formulation of damages, and as such the Class Certification hearing should be maintained so that the Court may make an informed decision on this issue. Both sides have legitimate arguments that should be put into the record before a decision should be made.

Rule 23(b)(3) demands that the class action be superior to all other available methods for the fair and efficient adjudication of the controversy. Defendants rely on the premise they established with *Steering Comm*., on calculation of damages to assert that the present matter is not suited for class adjudication. (Rec. Doc. 39-2 at 15). Essentially, Defendants contend that "the predominance of individual-specific issues relating to the plaintiffs' claims for compensatory and punitive damages in turn detracts from the superiority of the class action device in resolving these claim." *Allison v. Citgo Petroleum Corp*., 151 F.3d 402, 419 (5th Cir. 1998). The only problem with this assertion is

that the court only discussed these issues in the context of Class Action Title VII claims. *Id.* at 420. Additionally, Plaintiffs incorrectly assert that based on *Hernadez v. Motor Vessel Skyward*, 61 F.R.D 558 (S.D. Fla. 1973), "the common liability issues can be tried in a single class action trial with any individual issues of damages reserved for individual treatment." (Rec. Doc. 45 at 7). Several circuits have disapproved of *Hernandez's* reasoning preferring to give it unpersuasive treatment. See *McDonnell Douglas Corp. v. United States Dist. Court for Cent. Dist.*, 523 F.2d 1083, 1085 (9th Cir. 1975); See *In re Bendectin Products Liability Litigation*, 749 F.2d 300, 305 (6th Cir. 1984). Although Defendants' argument based on *Allison* seems slightly more persuasive than Plaintiffs', it appears that adjudication in a single proceeding of all the claims arising out of the January 30, 2007 incident would serve judicial efficiency. As with predominance, the arguments on the face of the pleadings do not create clear determinations, and as such would be more properly resolved in connection with the Class Certification Hearing.

New Orleans, Louisiana, this 29th day of September, 2009.

_____
UNITED STATES DISTRICT JUDGE